IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHARD DEWRAY HACKFORD,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF UTAH, et al.,<br><br>Defendants. | ORDER ADOPTING REPORT AND RECOMMENDATION IN PART<br><br><br>Case No. 2:14-CV-0872<br><br><br>Judge Robert J. Shelby |

This case is referred to Magistrate Judge Brooke C. Wells under 28 U.S.C. 636(b)(1)(B). On December 3, 2014, Plaintiff Richard Dewray Hackford filed a Motion for Service of Process. (Dkt. 4.) On February 4, 2015, Judge Wells issued a Report and Recommendation in which she recommended this court dismiss Mr. Hackford's Amended Complaint for failure to state a claim upon which relief can be granted. (Dkt. 8.) Because Judge Wells concluded the Amended Complaint was inadequate, she recommended that Mr. Hackford's Motion for Service of Process be denied as moot.

Mr. Hackford, who is proceeding pro se and *in forma pauperis*, filed a timely response to the Report and Recommendation, which the court will construe as an objection. (Dkt. 9.)[1] Mr. Hackford's objection restates at length a history of tribal agreements and certain actions taken pursuant to the 1954 Ute Partition and Termination Act, 25 U.S.C. § 677 *et seq*. The primary

---

[1] Mr. Hackford has subsequently filed a motion for default judgment based on Defendants' failure to respond to his objection. (Dkt. 10.) This motion is denied. Parties are under no obligation to object to a Report and Recommendation or to respond to objections of other parties. Further, Defendants have not been served, rendering default judgment inappropriate. Mr. Hackford is aware Defendants have not been served, given his Motion for Service of Process. (Dkt. 4.)

basis for his suit and his objection is that "[t]he Ute development and termination program of 1954 is legally flawed and should not have been approved by the Secretary of the Interior as it was written." (Dkt. 9, p. 12.)

Because it is dispositive of Mr. Hackford's case, and rests on a legal conclusion, this court reviews Judge Wells' Report and Recommendation *de novo*. Fed. R. Civ. P. 72(b). For the reasons stated below, the court adopts Judge Wells' Report & Recommendation in part. Mr. Hackford will be given strictly limited leave to amend his Complaint for a second time in the manner described below.[2] Failure to comply with the court's direction on the amendment will result in the dismissal of Mr. Hackford's remaining claims with prejudice.

## BACKGROUND

According to his Amended Complaint, Mr. Hackford is a United States citizen, a resident of the Uinta Valley Reservation, and a member of the Uinta Valley Shoshone Tribe of Utah Indians. The Uinta Valley Shoshone Tribe is not a federally recognized American Indian tribe. *See Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs*, 79 Fed. Reg. 4748-02, Bureau of Indian Affairs (January 29, 2014). Mr. Hackford's Amended Complaint relates directly to this lack of recognition. In brief, he claims that members of the Uinta Shoshone were included upon a list of "mixed-blood" members of the Ute Tribe in the 1950s. Those on this "mixed-blood" roll had their federal recognition terminated through the Ute Partition and Termination Act. 25 U.S.C. §§ 677 *et seq.*; *see Ute Distribution Corp. v. Sec'y of Interior of U.S.*, 584 F.3d 1275, 1276-78 (10th Cir. 2009); *Hackford v. Babbitt*, 14 F.3d 1457, 1462-63 (10th Cir. 1994).

---

[2] After receiving Mr. Hackford's first Complaint, Judge Wells instructed Mr. Hackford to refile an amended complaint that "complies with the rules and includes a short and plain statement of the relevant facts and the specific grounds for any requested relief." (Dkt. 6.) Mr. Hackford was put on notice that a failure to do so would result in a recommendation to dismiss his claims. Mr. Hackford's Amended Complaint demonstrates a good-faith effort to comply with those requirements, and Judge Wells did not appear to conclude otherwise.

Mr. Hackford seeks to challenge the inclusion and termination of members of the Uinta Shoshone tribe on that list. He brings eleven claims, most of which relate in some way to his lack of tribal membership. For relief, he requests this court to: (1) order the Secretary of the Interior to review the actions of the Bureau of Indian Affairs in administering the Ute Partition and Termination Act; (2) order the Secretary to "issue a comprehensive 'Plan' that will reveal the facts surrounding the illegal inclusion…"; and (3) order the Secretary to "restore said 455 Uinta Valley Shoshone Tribe members to their proper and lawful status and to finally bring said Act into full compliance with all applicable federal laws." (Dkt. 7, p. 13.)

## ANALYSIS

### A. Availability of Relief

Reviewing the Report and Recommendation *de novo*, we agree with Judge Wells' conclusion that the court cannot grant the relief Mr. Hackford seeks. (Dkt. 8, p. 3.)

Mr. Hackford is in effect seeking federal recognition for himself and other members of his tribe, whether for the Uinta Shoshone as an independent tribal entity or through the restoration of the Uinta Shoshone into the Ute ranks. The Office of Federal Acknowledgment within the Department of the Interior is empowered to provide this recognition through recognized procedures. *See* 25 C.F.R. 83 *et seq.* Indeed, the Tenth Circuit has held that "exhaustion is required when, as here, a plaintiff attempts to bypass the regulatory framework for establishing that an Indian group exists as an Indian tribe." *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 550 (10th Cir. 2001). Mr. Hackford has not made any representation as to whether he has exhausted his available administrative remedies, and his pleadings include no allegations that he has satisfied this pre-suit requirement. But even if he had adequately exhausted available administrative remedies, the court is not empowered to grant

the requested relief. The state, local, and tribal entities and officials Mr. Hackford has named as defendants also lack the power to direct the Secretary of Interior to take the actions requested.

Mr. Hackford's injunctive relief, if it could be ordered, would require action by the Secretary of the Interior.[3] Mr. Hackford, however, has not named the Secretary in his Amended Complaint. (Dkt. 7, p. 1.) To issue injunctive relief against the Secretary would render the Secretary a required party under Federal Rule of Civil Procedure 19. *See E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1076 (9th Cir. 2010). The court, however, cannot add the United States or its officials absent some recognized waiver of sovereign immunity.[4]

Congress can abrogate sovereign immunity by statute, but Mr. Hackford has cited only one federal statute as a basis for suit, 42 U.S.C. § 1983, which would not provide a basis for relief against a federal official.[5] *See, e.g.*, *Butz v. Economou*, 438 U.S. 478, 501-03 (1978) (discussing applicability of 42 U.S.C. § 1983 to those acting "under color of state law" and the separate possible bases for authorization of a suit against a federal official). In the case of a pro se litigant, however, the court will not penalize a plaintiff where they fail to cite proper legal authority. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Construing Mr. Hackford's Amended Complaint liberally, the statute most naturally suited to his requested relief would be the Administrative Procedure Act (APA) 5 U.S.C. § 701, *et seq.*, which does abrogate sovereign immunity. *See* 5 U.S.C. § 702. The APA permits an

---

[3] It is not clear if some of Mr. Hackford's injunctive relief is even theoretically possible; for instance, Mr. Hackford asks the court not only to order a review but to dictate its findings. (Dkt. 7, p. 13.)

[4] The analysis of the Secretary's immunity would not change significantly if Mr. Hackford had named the Secretary of the Interior in the first instance.

[5] Mr. Hackford cites to three additional statutes to support subject-matter jurisdiction, 18 U.S.C. § 1151, 25 U.S.C. § 1302, and 28 U.S.C. § 1343. (Dkt. 7, p. 2.) 18 U.S.C. § 1151 defines the term "Indian country" and is not a basis for either suit or jurisdiction, and 25 U.S.C. § 1302 imposes limitations on Indian tribes' powers of self-government, tracking the provisions of the Bill of Rights. Neither of these provisions are at issue in this case because Mr. Hackford is not a member of an Indian tribe; indeed, to have such membership recognized is the primary object of his suit. Mr. Hackford has also asserted subject-matter jurisdiction based on 28 U.S.C. § 1343, which provides district courts original jurisdiction over civil rights actions proceeding on the basis of a deprivation of constitutional rights.

individual to challenge "final agency action."  The Secretary of Interior's publication of the final rolls of full-blood and mixed-blood members arguably falls within that definition.  *Mixed-Blood Members and Full-Blood Members of Ute Indian Tribe of Uintah and Ouray Reservation, Utah: Notice of Final Membership Rolls*, 21 Fed. Reg. 2208 (April 5, 1956); *see Hackford v. Babbitt*, 14 F.3d 1457, 1462 (10th Cir. 1994).

Authorization for a suit by an individual to challenge final agency action in this manner begins when the agency action is taken, and the statute of limitations begins to run from the date of that final action.  5 U.S.C. § 704; *Fulbright v. McHugh*, 2014 WL 4424750, at *6 (D.D.C. Sept. 9, 2014).  The statute of limitation for the APA is six years.  28 U.S.C. § 2401 ("Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."); *see, e.g.*, *Impro Products, Inc. v. Block*, 722 F.2d 845, 849-50 (D.C. Cir. 1983).  Even assuming that the "final agency action" is dated to 1961, when the members were listed and published, the six-year statute of limitations expired decades ago, and Mr. Hackford's action under the APA is time-barred.  *Felter v. Norton*, 412 F. Supp. 2d 118, 124-25 (D.D.C. 2006).  Nor would exceptions based on continual wrongful acts or equitable tolling be available on the facts Mr. Hackford has alleged, *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007), given that the actions of state, local, or tribal entities cannot be imputed to the Secretary.

Mr. Hackford's prayed-for relief, which would be directed against the Secretary of the Interior, necessarily implicates sovereign immunity; and assuming *arguendo* that the relief would

be available under a statute abrogating sovereign immunity, such as the APA, the suit would be barred by the statute of limitations.[6]

Typically, the determination that a court cannot grant any of the relief that a plaintiff requests would be a sufficient basis to dismiss the entire complaint. Indeed, Judge Wells did not err in concluding that Mr. Hackford cannot receive what he has requested. We are mindful as always, however, that a "pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Mr. Hackford's individual claims for relief deserve independent analysis because in some cases they appear potentially independent from the primary object of his suit. The Magistrate Judge's Report and Recommendation includes no analysis on this point, so the court evaluates below the sufficiency of the separate claims.

**B. Claims for Relief**

In his Objection, Mr. Hackford effectively concedes that all of his claims for relief relate to the Ute Partition and Termination Act. (Dkt. 9, p. 2) ("Hackford's stated claim is clear that if not for P.L. 671 and State policy toward the so-called mixed-blood Indians purportedly affected by its operation this case would not have been necessary.") Thus, in Mr. Hackford's estimation, all of his claims are based on this underlying issue, which is legally barred as discussed above. Mr. Hackford's prayed-for relief reflects this conception, and the stated object of the suit. (Dkt. 7, pp. 12-13.)

Several of Mr. Hackford's actual claims, however, do not necessarily correspond to his prayed-for relief; and some of them do not directly implicate the Secretary of the Interior. This presents a difficulty. Though Mr. Hackford cannot obtain the relief he actually asks for, if he

---

[6] The court knows of no other statute that would provide Mr. Hackford a basis for injunctive relief against the Secretary, nor has Mr. Hackford cited to one. Even if one exists, it is overwhelmingly likely that an action proceeding under that statute would be time-barred by 28 U.S.C. 2401.

were to prevail on any of his claims, he would not be constrained to his requested relief. Fed. R. Civ. P. 54(c) (noting that all final judgments except a default judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). It would offend Federal Rule 54(c) to dismiss a claim because its corresponding relief is not properly requested, when such a deficiency would not bar recovery if he were to prevail. Moreover, in the case of a pro se litigant, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Nonetheless, even when read liberally, all eleven causes of action suffer from fatal deficiencies. On their face, many lack a legal basis, and those not legally barred lack adequate factual support. Further, as Mr. Hackford's own statements attest, most (and possibly all) of the causes of action are bound up with the central aim of his suit, which he cannot achieve.

Some of those deficiencies, however, may be curable by amendment, and "the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint." *Hall*, 935 F.2d at 1110 (10th Cir. 1991); *see Sirrium v. Bank of Am., N.A.*, 2012 WL 2450715, at *1 (E.D. Cal. June 26, 2012) (stating that a court must inform a "plaintiff of deficiencies in the complaint and give the plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect."). Mr. Hackford's eleven causes of action thus fall under two categories: those that are legally barred and for which amendment would be futile; and those that do not

necessarily rest exclusively on legally barred theories, and for which amendment might be productive.

For the reasons explained below, claims in the first category (III, VI-XI) are futile, and are dismissed with prejudice. Claims in the second category (I, II, IV, V) do not on the face of the Amended Complaint appear necessarily connected to the central object of Mr. Hackford's Amended Complaint, but nonetheless suffer from significant failures of notice pleading. Mr. Hackford is given leave to amend those four claims to cure that deficiency. However, this leave is granted only on a specific and narrow basis.

**1. Claims Dismissed with Prejudice.**

Mr. Hackford cannot proceed under 42 U.S.C. § 1983 against Utah or any other division of state or local government on the basis of enforcement of the 1954 Act and the tribal membership determinations made decades ago by the Secretary. Without this vehicle, many of his claims are legally barred. For instance, Mr. Hackford's eighth claim, styled "no separation of church and state," appears to be based on the Establishment Clause of the First Amendment, as incorporated against the states. *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 13-15 (1947). But the claim depends on Mr. Hackford's central objection to the actions taken by Congress and the Secretary of the Interior, and merely supplies a theory for the motivations of Utah in following federal law. His ninth claim and tenth claims are based upon the purportedly erroneous determinations of tribal status and membership made by the Secretary of Interior, which, as outlined above, cannot be directly challenged through an action in this court. Moreover, in the specific context of the Ute Partition Act, "[d]efendants' continual failure to recognize plaintiffs' possible status as members of the Ute Tribe does not amount to contemporary wrongful acts," *Felter v. Norton*, 412 F. Supp. 2d 118, 126 (D.D.C. 2006), let

alone legitimate causes of action.  Finally, the eleventh claim states no recognizable cause of action.

Other claims rest on arguments involving tribal membership, although in some cases the exact relationship is unclear.  For instance, Mr. Hackford's sixth claim for relief, based on unlawful abduction, appears to depend on officials asserting state rather than tribal jurisdiction over Mr. Hackford and his children.  His third claim, for garnishment of wages, and his seventh claim, for unlawful abduction and detainment, both appear to apply similar logic.  In the view of the court, the facts advanced do not make out any claim for relief.  Mr. Hackford is not a member of a federally recognized tribe—indeed, the core relief he is seeking is directed at trying to change that fact.  To the extent he asks the court to find that he is a member of a tribe, and then to use this finding as a basis for a suit against these officers and officials, the court can provide no relief.  Any attempt at amendment would clearly be futile.

Accordingly, Claims III and VIII-XI of Mr. Hackford's Amended Complaint are dismissed, with prejudice.

## 2. Claims Dismissed Without Prejudice.

Separately, four of Mr. Hackford's claims fail because they are inadequately supported by factual allegations.  Three claims make no mention of Mr. Hackford's tribal status, and do not appear to depend on membership: the first claim for relief, styled willful negligence; the fourth, styled excessive use of force; and the fifth, which appears to be either a tort or due process claim.  Another, his second claim for relief, may rest in part on conduct unrelated to his tribal status.

The direct relationship of these claims to the clearly stated purpose of his suit is unclear.  Fairly read, and given Mr. Hackford's own assertions, they relate to tribal recognition: Mr. Hackford may believe these incidents to be representative of the deprivations he has suffered

because of the determination made about his tribal membership.  To the extent these claims relate *only* to tribal recognition, they are not actionable.

Nonetheless, Mr. Hackford may have some alternative bases for asserting them, independent of issues relating to his tribal status.  For that reason, they may not be futile, and may represent a plausible claim for relief—after appropriate amendment.

Presently, however, these claims do not include information sufficient to provide defendants—including Uintah County and its employees, Duchesene County and its employees, and Mr. Barrett—with fair notice of the incidents in question.  Merely by way of example, in the case of Mr. Hackford's fifth claim, more details would be essential to even understand the basis on which Mr. Barrett's actions could be said to be unlawful.  Notice pleading is a basic requirement of a claim before this court, and without further information these claims cannot be allowed to proceed.  Fed. R. Civ. P. 8(a).

With this requirement in mind, Mr. Hackford is given leave to amend his complaint to cure the deficiencies and to provide more background information.  Fed. R. Civ. P. 15(a)(2).  Such information will allow the court to make a reasoned assessment of whether Mr. Hackford has made well-pleaded factual allegations that, if taken as true, provide a plausible claim for relief.  Fed. R. Civ. P. 12(b)(6); *see, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  It will also aid the court in evaluating whether the court has jurisdiction over these claims.  Fed. R. Civ. P. 8(a)(1).

The court admits of some skepticism on allowing further amendment.  Mr. Hackford himself has appeared to direct the court's attention solely to the central, futile goal of his suit, rather than the facts potentially underlying these claims.  In view of this, Mr. Hackford is on

notice that he may assert *only* a basis for these claims unrelated to his tribal recognition. Those claims must also only be asserted if they have an adequate factual basis, and an adequate legal basis, independent of his tribal status.

Given this guidance, in reviewing any amended complaint, the court will not construe liberally any deficiencies that Mr. Hackford now knows exist. Leave for amendment is not an invitation to use another means to secure relief which has been clearly stated to be unavailable. Finally, the court will bear in mind Judge Wells' prior order allowing Mr. Hackford to amend his original complaint, and the fact that he continues to proceed *in forma pauperis*. (Dkt. 6.)

## CONCLUSION

After careful consideration, the court **ADOPTS IN PART** Judge Wells's Report and Recommendation. (Dkt. 8). The court **DISMISSES** Claims for Relief III and VI-XI from Mr. Hackford's Amended Complaint, with prejudice. (Dkt. 7). The court **DENIES** as moot Mr. Hackford's Motion for Service of Process (Dkt. 4), and **DENIES** Mr. Hackford's Motion for Default Judgment. (Dkt. 10.)

Mr. Hackford is granted leave to amend his first, second, fourth, and fifth Claims for Relief (I, II, IV, and V) within thirty (30) days of this Order, in accordance with the guidance provided above. Mr. Hackford must file simultaneously with that second amended complaint any new motion for service of process, reflecting only the claims he has preserved. Failure to do so will result in the dismissal of this case.

**SO ORDERED** this 16th day of June, 2015.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge